*136 TEXTO COMPLETO DE LA RESOLUCIÓN
El 8 de abril de 2005, el Peticionario presentó el recurso de Certiorari de título, en interés de que revocáramos la Resolución emitida por el Tribunal de Primera Instancia de Guayama, el 2 de marzo del presente, y notificada el 9 de marzo. En la recurrida Resolución, Instancia declaró con lugar una moción de supresión de evidencia presentada por el Recurrido.
De conformidad con las razones que exponemos a continuación, expedimos el recurso de Certiorari y revocamos la Resolución en discusión. Consecuentemente, devolvemos la causa para la continuación de los procedimientos ante el foro sentenciador.
I
El Recurrido está siendo procesado en el Tribunal Federal para el Distrito de Puerto Rico, por el asesinato de su ex esposa, Yesenia Ortiz Acosta, en medio de un “car jacking”. Además, el arresto del Recurrido se condujo de conformidad con un “Operation Plan”, diseñado por el Federal Bureau of Investigation (“FBF), e implementado por agentes policíacos federales y estatales. Tal plan sugiere que debe tenerse extrema cautela o cuidado al efectuar el arresto. Véase Anejo IX de “Petición de Certiorari”. Específicamente, lee el Inciso D del “Operation Plan”, de la siguiente manera:
“D. Caution Statement: RODRIGUEZ-BERRIOS is a former Police of Puerto Rico police officer. HERNANDEZ-CARTAGENA and RODRIGUEZ-BERRIOS are civilians. There is no indication that any of these individuals is armed. However, due to the violent nature of the commited crimes and employment history of RODRIGUEZ extreme caution should be exercised during the execution of the arrest of any of these subjects(Subrayado nuestro)
El 26 de febrero de 2004, alrededor de diez agentes federales y estatales se personaron a la residencia del Recurrido para diligenciar una orden de arresto en su contra. Una vez dentro de la residencia del Recurrido, éste se divisó en el pasillo, desnudo y con los brazos alzados. Luego que se comenzara a efectuar el arresto, los agentes ven a una señora y una niña salir de uno de los dos cuartos que ubicaban a los lados del pasillo en que se arrestó al Recurrido. En ese momento, el agente federal John S. Morales López (“Agte. Morales”) decide revisar el cuarto del cual salieron las mencionadas féminas. Alega el Agte. Morales que llevó a cabo un registro de precaución o “protective sweep”, esto es, para asegurarse que no hubiese alguien más en el cuarto que fuera a atacar o poner en peligro la vida de los agentes. Al entrar al cuarto, miró alrededor y en lugares donde pudiese alguien esconderse; por lo que miró debajo de la cama y allí fue donde encontró el arma de fuego en controversia. 
Luego de formular cargos contra el Recurrido por infracción a la Ley de Armas, se acusó formalmente. Con posterioridad, el Recurrido presentó dos mociones: una sobre supresión de evidencia al amparo de la Regla 234 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234; la otra, sobre desestimación a la luz de la Regla 64(p) de las de Procedimiento Criminal. El Peticionario se opuso por escrito a ambas mociones. El 10 de febrero del presente, el Tribunal de Instancia celebró vista a los efectos de resolver ambas mociones, luego de lo cual declaró con lugar la supresión, mas no así la desestimación. Se señaló juicio para el próximo 11 de mayo.
Inconforme con la supresión de evidencia, el Peticionario recurrió ante nos y apunta a la comisión del siguiente error:

“Erró el Tribunal de Primera Instancia al no resolver que el registro que condujo a la incautación del arma suprimida fue uno razonable bajo las circunstancias del caso y la norma de registro del área para protección (“protective sweep ”) establecida por la Corte Suprema de los Estados Unidos en Maryland vs. Buie, 494 U.S. 325 (1990).”

*137 Luego que le ordenáramos expresarse, el Recurrido compareció mediante escrito de oposición, el 4 de mayo. Ahora, con el beneficio de ambas comparecencias, así como de la Resolución del Tribunal de Instancia y la Transcripción de la Vista Preliminar, procedemos a resolver.
II
Emanan de nuestra Constitución, así como de la Federal, la protección contra registros y allanamientos irrazonables. Véase Tomo 1 L.P.R.A. Art. 13 Sec. 10 y Emda. Art. IV. Como regla general, un registro sin orden se presumirá irrazonable, por lo que corresponderá al Estado, por conducto del Ministerio Público, probar la razonabilidad del registro efectuado sin orden para validarlo. Pueblo v. Vázquez Méndez, 117 D.P.R. 170 (1986). Esta precisamente es la situación que nos concierne.
Contra el Recurrido existía una orden de arresto, mas no así de registro. Al personarse los agentes de la policía federal y estatal a la residencia del Recurrido para arrestarlo, luego de ver al Recurrido y arrestarlo, una señora y una niña salieron de un cuarto, de los dos que quedaban a ambos lados del pasillo de la residencia, lugar en que se intervino con el Recurrido. Ante la aparición de estas dos personas, los agentes decidieron tomar precaución y verificar que no hubiera más nadie en la casa. Así es que el Agente Morales decide mirar alrededor del cuarto de donde emergieron la señora y la niña, y verificar en lugares donde pudiera alguien esconderse, como lo era debajo de la cama. Al mirar allí, el Agte. Morales encontró el arma que se incautó, y del cual el Recurrido solicitó se suprimiera como evidencia. El Ministerio Público se opone a tal supresión por entender que el registro de precaución e incidental al arresto, llevado a cabo por el Agte. Morales, fue razonable al amparo de una opinión del Tribunal Supremo Federal.
Así pues, la esencial controversia que nos ocupa hoy, es si acogemos la norma denominada como “protective sweep” que trazó la Corte Suprema de los Estados Unidos en Maryland v. Buie, 494 U.S. 325 (1990). Antes de resaltar el ratio decidendi de la precitada opinión, acogemos la norma allí esbozada y entendemos que debe ser tal norma la que impere en casos como el de autos. A esos efectos, coincidimos con la opinión del distinguido letrado, Ernesto L. Chiesa Aponte, en cuanto a su siguiente tesis:
“Igualmente, estimo que si una norma claramente establecida por la Corte Suprema de los Estados Unidos -en relación con una cláusula constitucional con equivalente en nuestra Carta de Derechos-, no ha sido rechazada por nuestro Tribunal Supremo, los fiscales y agentes del orden público deben actuar bajo la premisa de que la misma norma se aplica en Puerto Rico (salvo otra indicación al contrario en el historial de la Convención Constituyente). Así ocurre, por ejemplo, con el stop and frisk.” (Subrayado nuestro) Véase Ernesto L. Chiesa Aponte, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. U.P.R. 83 (1996).
Téngase presente que en Maryland, supra, los agentes tenían, al igual que en los hechos que nos ocupan hoy, una orden de arresto contra uno de dos individuos que cometieron un asalto. Al diligenciar el arresto, la persona objetivo salió del sótano de su residencia, por lo que los agentes decidieron verificar el sótano para cerciorarse de que no había otra persona o incluso el otro sospechoso de asalto. Si bien es cierto que se trató de un dúo el que cometió delito en Maryland, supra, y el Recurrido de epígrafe intenta, en su beneficio, destacar este aspecto para distinguirlo de su caso, no podemos ignorar que en el caso que precisamente nos ocupa, se trata de tres (3) individuos los acusados por el “car jacking” y desaparición de la ex esposa del Recurrido, quien es uno de los coacusados, y que el “Operation Plan” para arrestar a los coacusados fue uno en conjunto. Por tanto, bien pudo pensar, y con mucha razón, el Agte. Morales que alguno o ambos de los coacusados estaba allí en la residencia del Recurrido al momento de arrestársele, o incluso cualquiera otra persona que pudiera poner en peligro a los agentes. La ingenuidad no debe ser partícipe de nuestra apreciación de situaciones como las de autos.
En la discutida jurisprudencia federal, el Tribunal declaró que: “A "protective sweep" is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or *138 others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding(Subrayado nuestro) Más adelante, expresa Maryland, supra: “We conclude that the Fourth Amendment would permit the protective sweep undertaken here if the searching officer "possessefd] a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted]' the officer in believing," [citas omitidas] that the area swept harbored an individual posing a danger to the officer or others.
The risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter. A Terry or Long frisk occurs before a police-citizen confrontation has escalated to the point of arrest. A protective sweep, in contrast, occurs as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him for a crime. Moreover, unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's "turf " (Énfasis y subrayado nuestros).
No debemos perder de perspectiva que los hechos deben ser apreciados según la particularidad de sus circunstancias, caso a caso, y atendiendo cuidadosamente las singularidades respectivas de cada causa para de esa manera no abstraemos de la contemporaneidad fáctica al momento de hacer justicia. Así debemos poder efectivamente resolver según los hechos, y más importante aún, conforme a Derecho. Recordemos que el Derecho es dinámico, cambiante, y debe ajustarse a la actualidad. Más aún, en lo que respecta a la doctrina de “protective sweep”, nos compele a manifestar que no se trata de algo nuevo, sino más bien del desarrollo o aclaración de la vigente norma sobre registro incidental al arresto. Con lo anterior, aclaramos que ello no propende al registro indiscriminado del entorno del arrestado, contra quien sólo existe una orden de arresto, mas no así de registro. Por el contrario, caso a caso, y cuidadosamente a modo excepcionalísimo, se permitirá un registro sin orden a un arrestado y sus áreas circundantes, sólo si se tiene una razonable creencia de que existe algún potencial peligro para la seguridad de todos o si se cree que puede haber alguna otra persona en los alrededores que represente algún peligro. Es más que razonable adoptar esta norma. Lo contrario, fácilmente se traduce en una seria amenaza para la seguridad no sólo de los agentes del orden púbüco, sino también para la misma persona arrestada, así como para aquéllos que se encuentren cerca al momento del arresto. Repetimos, hoy día, en el atormentado y violento mundo que vivimos, la ingenuidad no puede ser compañera de percepción.
Al amparo de lo indicado, no albergamos la más mínima duda de que el registro no sólo fue incidental al arresto, sino razonable, de conformidad con las circunstancias concomitantes al arresto. Tampoco debió el hermano foro de Instancia albergar dudas.
III
Por los esgrimidos fundamentos, expedimos el presente recurso de Certiorari y revocamos la Resolución que emitió el Tribunal de Primera Instancia, el 2 de marzo de 2005. En su consecuencia, devolvemos la causa para su continuación, tomando en consideración la evidencia erróneamente suprimida.
Notifíquese de inmediato por teléfono o facsímil y vía ordinaria a las partes y al Honorable Juez Enrique Arias Maldonado.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
La Juez Pesante Martínez disiente con opinión escrita.
*139 Leda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones
ESCOLIO 2005 DTA 80
1. El arma es marca Remington, modelo Sportsman, número de serie 260593V. Véase Anejo de “Petición de Certiorari’, página 6.